IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN JACKSON,

Plaintiff, No. CIV S-09-2801 EFB

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant. ORDER

_______________________________/

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons discussed below, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

I. BACKGROUND

Plaintiff formally applied for SSI on August 19, 2004. Administrative Record ("AR") 19. His application alleged that he had been disabled since August 31, 2004. *Id.* The application was denied initially and upon reconsideration, and plaintiff requested an administrative hearing. *Id.* On January 12, 2007, a hearing was held before administrative law judge ("ALJ") Steven D. Slahta. *Id.* Plaintiff was represented by counsel and testified at the hearing, along with vocational expert William R. Harvey. *Id.*

The ALJ issued a decision on March 29, 2007, finding that plaintiff was not disabled.[1] *Id.* at 19-30. The ALJ made the following specific findings:

> 1. The claimant has not engaged in substantial gainful activity since August 31, 2004, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2. The claimant has the following severe combination of impairments: mild degenerative joint disease of the thoracic and lumbar spine, chronic obstructive pulmonary disease, anxiety disorder, and is status post right hip replacement secondary to remote history of avascular necrosis (20 CFR 416.920(c)).
>
> ...
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> ...
>
> 4. The undersigned finds that, giving the claimant generous benefit of the doubt for hip and leg pain, along with symptoms of anxiety, the claimant retains the residual functional capacity to perform the exertional demands of sedentary work, or work which requires maximum occasional lifting of ten pounds, and standing

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 *et seq*. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

or walking no more than 2 hours per day. Most sedentary jobs are performed while seated, and those performed in the seated position often require the worker to operate hand or leg controls (20 C.F.R. §§404.1567 and 416.967). The evidence supports a finding the claimant is not able to lift and carry more than 10 pounds on a frequent or occasional basis, and cannot stand or walk more than 2 hours per day.

The claimant's capacity for sedentary [work] is diminished by significant non-exertional limitations which make it difficult to sit for prolonged periods. Claimant must be allowed to alternately sit or stand, at will. Claimant must avoid working near hazardous machinery, at heights, or in exposure to temperature extremes. Claimant has occasional limitations for climbing (stairs), balancing, stooping, crouching, bending, crawling, and kneeling. Due to symptoms of chronic pain, mild anxiety, and claimant's limited education, the claimant is limited to performing only entry-level, unskilled, simple, and repetitive 1 or 2 step work tasks, in a low-stress environment, where he works with "things" rather than people.

The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: mild restriction of activities of daily living; mild to moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.

...

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

...

6. The claimant was born on September 4, 1961 and was 42 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited 9th grade education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

...

////

> 10. The claimant has not been under a disability, as defined in the Social Security Act, since August 18, 2004, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 19-30.

Plaintiff requested that the Appeals Council review the ALJ's decision. However, on August 4, 2009, the Appeals Council denied review, leaving the ALJ's decision as the "final decision of the Commissioner of Social Security." *Id.* at 5-8.

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff contends that the ALJ erred in rejecting the statements of Joyce White, his sister, and his friend and neighbor, Deborah Freeman. Plaintiff also argues that the ALJ erred in failing

to credit the testimony of the vocational expert (VE) in response to questions which accurately reflected plaintiff's functional limitations, and that the jobs identified by the VE were inconsistent with the Dictionary of Occupational Titles (DOT).

White and Freeman are not medical experts but rather testified as lay witnesses. Nonetheless, "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). Further, the reasons "germane to each witness" must be specific. *Id.* at 116; *Stout v. Comm'r of Soc. Sec*., 454 F.3d 1050, 1054 (9th Cir. 2006) (finding that the ALJ erred by failing to consider the lay testimony of two witnesses about how the plaintiff's impairments affected his ability to work).

In this case, the ALJ addressed White's testimony by writing only:

> At the hearing, Joyce White, the claimant's witness sister, also appeared and testified. Ms. White stated that she sees the claimant approximately once or twice per week. Ms. White's testimony essentially endorsed claimant's testimony of severe physical and emotional limitations.

AR 26. The next part of the opinion found that plaintiff's testimony was not credible, and explained the reasons for the credibility finding. Thus, the ALJ did not explicitly state what weight he gave to White's testimony or that it was being rejected for specific and germane reasons. However, defendant argues that the ALJ implicitly rejected White's testimony for the same reasons he rejected plaintiff's testimony.

White testified at plaintiff's hearing immediately after the plaintiff testified. White stated that she had observed "everything that [plaintiff] has described in his hearing here. Basically his limitations that he described to you as getting around, you know, the problem with him getting

up and down, the numbness, you know, the mental effectness (sic)." AR 648. This part of White's testimony is consistent with the ALJ's assertion that she "essentially endorsed" plaintiff's testimony.

However, White also expanded upon plaintiff's testimony, even disagreeing in part as to the severity of plaintiff's anxiety.[2] Plaintiff had testified that he had "severe anxiety and depression"; that he would get heart palpitations and be shaky and nervous and "want to squeeze into a ball and just lay there like this." AR 626. He stated that this occurred "any time. Sometimes every day, sometimes every other day," and that the problems were triggered by being in public or with people he did not know. *Id.* He further stated that his depression made him "curl up and just lay there" in bed. *Id.* at 637.

When asked about plaintiff's anxiety, White testified, "my observance to it would have to be not just anxiety. I feel like he does suffer from anxiety, but . . . I feel he's also having panic attacks." *Id.* at 651. She said that when he stayed with her for a couple of nights, she brought him to the grocery store, but he refused to come into the store and waited in the truck instead. *Id.* She described plaintiff's state when she came back to the truck:

> he seemed like he was almost hyperventilating...when I say panic attacks, his head, his breathing was very, very heavy....He was sweating, like a cold sweat, and shaking, his hands were trembling....He had a hard time carrying on a conversation with me and couldn't really describe to me what was wrong. So when we went home, he went in the room, and he laid down for a few hours restlessly...

*Id.* at 652. White continued:

> When my brother stated the fact that he has anxiety when he's around people he doesn't know or more than a few people and family members, I would have to disagree with that. I would have to say that he has it on a general basis for no reason. I think it's uncontrollable. I state that because when he, I've been around him just he and I even in the car...taking him somewhere just to the store, or even being in my own home where I feel like he feels very comfortable, I've noticed

[2] White did not merely endorse plaintiff's testimony. She described her own observations, and indeed, disagreed with plaintiff's description of his mental problem as mere anxiety, stating that she believed that he experienced "panic attacks" as well." *Id.* at 653.

> that...he'll start getting real fidgety...as far as the mental status and the anxiety and panic attack, yes, I notice that because he can't concentrate for a long period of time...I notice that he loses his train of thought very easily. We can be into a conversation, and this comes and goes I notice with him. Sometimes he can carry on a good conversation with me, a very intellectual....

*Id.* at 652-53. White testified that plaintiff lacks concentration and at times shakes. Plaintiff's attorney asked her, "Do you ever notice shaking at other times, other than when he seems to be anxious?" *Id.* at 654. White responded "yes" and plaintiff's counsel then asked about White's observations of depression. *Id.* at 655-56. However, the testimony was cutoff by the ALJ who moved to another subject and called another witness.

Defendant argues that the ALJ found that White essentially endorsed plaintiff's testimony, and therefore the reasons he provided for discrediting plaintiff's opinion constitute specific, germane reasons for rejecting her opinion as well. It is problematic that the ALJ did not state what weight he gave to White's testimony, or that he was rejecting it for the same reasons that he rejected plaintiff's testimony. The ALJ was required to state specific and germane reasons for rejecting the testimony and he plainly did not do so. This clearly was error.

However, it does not appear that White's testimony is material to the outcome here. White is a lay witness and disregarding her opinions as to whether plaintiff had a condition beyond depression and anxiety is not the same as ignoring a treating or consulting physician's opinion in that regard. Given that White is not a medical expert her opinions as to plaintiff's medical condition is simply not relevant. Her testimony has relevance only as to lay observations about plaintiff's conduct and activities.

In assessing plaintiff's credibility, the ALJ properly took into account his finding that plaintiff's subjective complaints were inconsistent with the objective medical evidence in the record (AR 26-28, 627-629, 631, 634-635). *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (medical evidence may be considered in credibility analysis); *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (same). As to plaintiff's mental status, the psychological evaluations do not undermine the ALJ's findings that plaintiff mental limitations were only mild

to moderate. AR 28, 402, 477. Likewise, it was proper for the ALJ to consider plaintiff's manner of testifying at the hearing in assessing credibility as to the severity of any mental limitations. The ALJ found that plaintiff "was able to demonstrate excellent concentration and recall throughout his hour-long hearing. He spoke swiftly and nonstop about symptoms and impairments without hesitation or without evident struggle with his memory." AR 28. Those reasons for not accepting all of plaintiff's accounts of his limitations would apply to the similar testimony by White. White's testimony, although more detailed and certainly not identical to plaintiff's, was not materially different from plaintiff's such that it could make a difference in the outcome of plaintiff's claim.

Plaintiff also argues that the ALJ erred in failing to discuss the statements submitted by plaintiff's neighbor, Deborah Freeman. Freeman submitted two functional reports regarding plaintiff's limitations, which the ALJ did not address or acknowledge in his opinion. *Id.* at 95-103, 121-29. Defendant admits that this was an error, but contends that it was harmless.

Clearly, the ALJ should have addressed and made findings as to Freeman's statements. Where an ALJ fails to "properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Social Security Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Freeman wrote that plaintiff used to be able to, but could no longer, have "a full-time job and the ability to maintain it." AR 96. She wrote that plaintiff sometimes had to be reminded of his doctors' appointments, and that it took him 30 minutes to an hour to prepare a meal for himself, even though he no longer prepared "complete meals that aren't frozen or in a can" because he "has to take breaks and sit down a lot." *Id.* at 97. She stated that household chores such as sweeping and cleaning house took him two or three hours because he had to take breaks and sit down. *Id.* She wrote that it took him "more time than usual" to dress, bathe, care for his

hair, shave and feed himself "because of the pain and lack of his movement he has to rest a lot." *Id.* at 122. She wrote that plaintiff needed help doing house and yard work in part because he "usually needs help with everything because he gets frustrated, depressed and just hurt so bad he can't do it himself." *Id.* at 123. She stated that plaintiff did not drive because he was in too much pain, and that his disabilities affected his ability to complete tasks. *Id.* at 125-26.

If Freeman's testimony were fully credited, the ALJ might have found that plaintiff did not have the concentration to stay on task for an eight-hour workday. However, the ALJ had already rejected similar testimony by the plaintiff and provided specific reasons for doing so. Moreover, Freeman's lay statements regarding plaintiffs condition and limited activities do not undermine the ALJ's specific RFC findings that expressly took into account plaintiff's limitation to sedentary work.[3] The ALJ found that plaintiff must be "allowed to alternatively sit or stand, at will." AR 24. Thus, the ALJ's failure to address Freeman's statement was harmless error.

Finally, plaintiff argues that the hypothetical question the ALJ posed to the VE failed to account for all of plaintiff's mental and physical limitations.[4] When testimony from a vocational expert is used, the hypothetical question posed to the expert "must contain all of the limitations and restrictions that are supported by substantial evidence." *Rollins*, 261 F.3d at 857. Plaintiff

---

[3] Sedentary work is defined as work where "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday". SSR 83-10.

[4] The VE testified that plaintiff could perform jobs as a medical supplies assembler, Dictionary of Occupational Titles (DOT) number 559.687-014, and a surveillance system monitor, DOT number 379.367-010 AR 656-657. Furthermore, contrary to plaintiff's assertion, the VE specifically testified that the jobs identified were consistent with the DOT and this constitutes substantial evidence for the ALJ to rely on in determining that plaintiff had the capacity to perform other work. Moreover, the limitation to simple repetitive tasks was not per se inconsistent with the reasoning levels for the jobs identified. *See Salazar v. Astrue*, 2008 WL 4370056 (C.D. Cal. 2008) at *7 ("Numerous courts in this District and elsewhere have rejected the argument made by Plaintiff here, to wit, that a limitation to simple, repetitive tasks is inconsistent with Level 2 reasoning ability and is consistent, at most, with Level 1 reasoning"); *Meissl v. Barnhart*, 403 F. Supp.2d 981, 984-85, (C.D. Cal. 2005); *Flaherty v. Halter*, 182 F.Supp.2d 824, 850 (D. Minn. 2001); *Tudino v. Barnhart*, 2008 WL 4161443, *11 (S.D. Cal. Sept. 5, 2008); *Squier v. Astrue*, 2008 WL 2537129, *5 (C.D. Cal. June 24, 2008). *See also*, *Renfrow v. Astrue*, 495 F.3d 918, 921 (8th Cir. 2007); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009).

claims that the ALJ excluded the limitations described in the testimony of White and written statements of Freeman. However, the ALJ properly included all of the limitations that he found to be supported by substantial evidence in the record. As discussed above, the ALJ found that the testimonies of plaintiff, and necessarily White, overstated the limiting effects of plaintiff's symptoms when compared to the medical evidence and the plaintiff's appearance, conduct and manner of testifying at the hearing. Moreover, the statement of Freeman does not raise limitations not already taken into account by the ALJ's RFC finding that plaintiff was limited to sedentary work. Thus, "the ALJ did not err in omitting the other limitations that [plaintiff] had claimed, but had failed to prove." *Rollins*, 261 F.3d at 857.

IV. CONCLUSION

For the reasons stated above, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. Defendant's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in defendant's favor.

DATED: March 25, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE